**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

GLORIA ESTHER CALDWELL,

           Plaintiff,

vs.

           Case No. 3:15-cv-942-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I.  Status**

Gloria Esther Caldwell ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of allergies, depression, anxiety, high blood pressure, and back problems. See Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed October 6, 2015, at 292. Plaintiff filed applications for DIB and SSI on September 16, 2009, alleging in both an onset date of January 1, 2008. Tr. at 238-39 (DIB); Tr. at 233-35 (SSI). Plaintiff's applications were denied initially, Tr. at 114-15 (DIB); Tr. at 117-18 (SSI), and were denied upon reconsideration, Tr. at 125-26 (DIB); Tr. at 127-28 (SSI).

At a hearing on August 31, 2011, an Administrative Law Judge ("ALJ") heard testimony from a vocational expert ("VE") and from Plaintiff, who was represented by counsel. Tr. at 37-63. On January 18, 2012, the ALJ issued a decision ("2011 Decision")

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed October 6, 2015; Reference Order (Doc. No. 14), entered October 8, 2015.

finding Plaintiff not disabled "from January 1, 2008, though the date of th[e] decision." Tr. at 103 (emphasis and citation omitted); see Tr. at 90-103. Plaintiff then requested review by the Appeals Council, Tr. at 184, and on March 26, 2013, the Appeals Council vacated the ALJ's 2011 Decision and remanded the case to the ALJ with instructions, Tr. at 110-12.

On remand from the Appeals Counsel, the ALJ held a hearing on July 17, 2013, during which she heard testimony from a VE and from Plaintiff, who was represented by counsel. Tr. at 64-82. At the hearing, Plaintiff amended her alleged disability onset date to May 17, 2010. Tr. at 67. On January 7, 2014, the ALJ issued a new decision ("2013 Decision" or "Decision") finding Plaintiff not disabled "from May 17, 2010, through the date of th[e D]ecision," and denying Plaintiff's claim. Tr. at 30; see Tr. at 16-30. Plaintiff again requested review by the Appeals Council, Tr. at 11, and she submitted to the Council additional evidence in the form of a brief by her attorney and medical records from Grady Health System dated November 2012 to March 2013, Tr. at 6, 7-8; see Tr. at 377-80 (brief).[2] On June 6, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's 2013 Decision the final decision of the Commissioner. Tr. at 1-5. On July 31, 2015, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff makes three arguments on appeal: (1) that the ALJ's "analysis of the mental impairment opinions in this case is filled with errors of fact and improperly cherry picks through the opinions, ultimately only crediting the opinion of a nonexamining state agency psychologist who issued her opinion without the benefit of the vast majority of the evidence

---

[2] The Appeals Council's exhibit lists indicate that the Grady Health System medical records are included in the administrative transcript as Exhibit 23F. Tr. at 6, 8. In the administrative transcript filed in this Court, however, the medical records have been removed from Exhibit 23F and replaced by pages that state the following message: "THIS PAGE HAS BEEN REMOVED BECAUSE IT BELONGS TO ANOTHER SSA NUMBER HOLDER." Tr. at 653-68.

in this case"; (2) that the ALJ "improperly relied on the [VE]'s response to an incomplete hypothetical question that failed to include the Commissioner's own finding that [Plaintiff] was unable to use her right upper extremity more than 66% (limited to frequent use) of the workday"; and (3) that the ALJ "failed to articulate good cause for not crediting the long-time treating opinion of [Alex L. Gonzales, M.D.] as to [Plaintiff's] physical impairments." Plaintiff's Brief (Doc. No. 16; "Pl.'s Br."), filed December 7, 2015, at 1 (emphasis omitted); see id. at 12-25. Defendant filed a Memorandum in Support of the Acting Commissioner's Decision (Doc. No. 18; "Def.'s Mem.") on February 2, 2016. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, in the 2013 Decision at issue, the ALJ followed the five-step inquiry. See Tr. at 18-30. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since May 17, 2010, the alleged onset date." Tr. at 18 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease, hypertension, affective disorders and an anxiety-related disorder." Tr. at 18 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 20 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work . . . with additional restrictions. Specifically, [Plaintiff] is limited to only occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; [she] is limited to occasional overhead reaching with her right upper extremity, and frequent use [of] her right upper extremity in all directions. [Plaintiff] cannot perform tasks that require climbing ladders, ropes or scaffolds. [She] must avoid work environments requiring concentrated exposure to vibrations, hazards, machines and heights. [She] is limited to work that allows her to alternate at will between periods of sitting and standing. [She] is limited to tasks involving simple instructions, and simple work-related directions.

Tr. at 22 (emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a housekeeper or kitchen helper. Tr. at 28 (emphasis and citation omitted). At step five, the ALJ considered Plaintiff's age (forty-five (45) years old on the alleged onset date), education ("limited education"), work experience, and RFC, and the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 28 (emphasis and citation omitted). Relying on the testimony of the VE, the ALJ identified as representative jobs a "Ticket Taker," a "Cashier II," and a "Toll

Collector." Tr. at 29. The ALJ concluded that Plaintiff "has not been not under a disability . . . from May 17, 2010, through the date of th[e D]ecision." Tr. at 30 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

As noted, Plaintiff makes three arguments on appeal. Because the first and third arguments presented by Plaintiff both concern the ALJ's assessment of medical opinions, the undersigned addresses these arguments together, concluding that the case is due to be

remanded for further consideration of the medical opinions. Given this conclusion, and given that reconsideration of the evidence in light of the Court's overall findings is likely to impact the step-five findings challenged in Plaintiff's remaining argument, it is unnecessary to substantively address the remaining argument. See Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues); Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand).

Plaintiff disputes the ALJ's assessment of the medical opinions as to Plaintiff's mental impairments, including opinions of treating physician Dr. Gonzalez, examining psychologists Diana M. Benton, Psy.D., and Rodney Poetter, Ph.D, and non-examining psychologist Jane Courmier, Ph.D. See Pl.'s Br. at 1, 12-20. Plaintiff also disputes the ALJ's assessment of Dr. Gonzalez's opinion as to Plaintiff's physical impairments. See Pl.'s Br. at 1, 24-25. Regarding the assessment of her mental impairments, Plaintiff argues overall that "the ALJ erred in granting significant weight to the opinion of an outdated, non-examining, non-treating state agency consultant who rendered an opinion with hardly any evidence in the record over the opinions of one treating physician (Dr. Gonzales) and three separate examining mental health specialists . . . ." Pl.'s Br. at 12. Plaintiff asserts the ALJ's assessment "is a hodge podge of the ALJ improperly picking and choosing from the evidence and also mistakenly describing the material facts." Id.

Below, the undersigned sets out the law for assessing medical opinions, addresses Dr. Gonzalez's treating opinions, and then discusses the remaining medical opinions at issue.

-6-

**A. Applicable Law**

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded to each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[4] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight

---

[4] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v.

Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)); see also Colon v. Comm'r of Soc. Sec., No. 6:14-cv-378-Orl-DNF, 2015 WL 5599896, at *4 (M.D. Fla. Sept. 22, 2015) (unpublished) (interpreting Winschel's weight-articulation requirement to apply to non-treating opinions); Cranford v. Comm'r of Soc. Sec., No. 6:13-cv-415-Orl-GJK, 2014 WL 1017972, at *4 (M.D. Fla. Mar. 17, 2014) (unpublished) (stating that "[w]eighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability").

## B. Dr. Gonzalez

Plaintiff was treated in Dr. Gonzalez's office regularly from at least 1999 to 2013. Tr. at 443-70, 485-91, 516-89, 624-42.[5] Dr. Gonzalez completed physical and mental RFC assessments in November 2010 and July 2013. Tr. at 436-40 (physical, November 2010); Tr. at 441-42 (mental, November 2010); Tr. at 644-45 (mental, July 2013); Tr. at 647-51 (physical, July 2013). On the 2010 physical assessment, Dr. Gonzalez diagnosed Plaintiff with chronic lower back pain, hypertension,[6] anxiety, and depression, and he wrote that she "will have continued pain, anxiety, [and] depression for [her] lifetime." Tr. at 436. He indicated Plaintiff is "[i]ncapable of even 'low stress' jobs" because she "is emotionally distressed easily[,] and under stress [she] is unable to concentrate enough to function properly [at] work." Tr. at 437. He also indicated Plaintiff "[c]onstantly" experiences "pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks." Tr. at 437. Dr. Gonzalez's 2013 physical RFC

---

[5] The cited pages are primarily treatment notes from Dr. Gonzalez's office, interspersed with lap reports and other documents related to Plaintiff's treatment. As discussed further below, it is somewhat unclear which treatment notes were signed or completed by Dr. Gonzalez himself, as opposed to a nurse on his staff.

[6] Dr. Gonzalez used the abbreviation "Htn," which the undersigned interprets as hypertension.

questionnaire differs in some respects from the 2010 assessment. See Tr. at 647-51. Among the differences are greater physical limitations, see Tr. at 648-50, and a comment that Plaintiff is "unable to work," Tr. at 649.

Regarding Plaintiff's 2010 mental RFC, Dr. Gonzalez indicated that Plaintiff was markedly limited in her abilities "to carry out short and simple instructions," "to maintain attention and concentration for extended periods," "to perform activities within a regular schedule," "to make simple work-related decisions," and "to accept instructions and respond appropriately to criticism from supervisors," among other marked and moderate limitations. Tr. at 441-42. In the 2013 mental RFC assessment, Dr. Gonzalez indicated Plaintiff is severely limited in these same respects and in all others listed on the questionnaire. Tr. at 644-45.

> In the Decision, the ALJ assessed Dr. Gonzalez's opinions in part as follows:
>
> I am not assigning any significant [weight] to [Dr. Gonzalez's] opinions as many of the limitations that he identified could not reasonably be expected to emanate from medically determinable impairments and are not well-supported by his treatment records or function-by-function limitations, let alone corroborated by documented observations of physical or mental abnormalities. Instead, his treatment records contain multiple reports about [Plaintiff] waiting for disability to be approved (e.g. Exhibit 12F, pages 1 and 7).[7] These entries suggest[] that Dr. Gonzalez is more interested in [Plaintiff's] approval for benefits than he is in treating her impairments and is acting as an advocate for her receipt of benefits, rather than providing an accurate assessment of her ability to work, notwithstanding any impairment related limitations.

Tr. at 24.

The ALJ also found that Dr. Gonzalez's "opinions in general are unreliable." Tr. at 24. As support for this finding, the ALJ noted Plaintiff worked as a hotel housekeeper through May 2010, thus covering part of the period to which Dr. Gonzalez's physical RFC

---

[7] The cited pages from Exhibit 12F are located on pages 485 and 591 of the administrative transcript.

-10-

assessments applied. Tr. at 24. The ALJ observed that Plaintiff "testified that she stopped performing this job due to depression rather than due to the physical limitations." Tr. at 24. It also appeared to the ALJ that Plaintiff "has been primarily treated by Dr. Gonzalez's ARNP" (advanced registered nurse practitioner), and that Dr. Gonzalez did not "personally examine[]" Plaintiff. Tr. at 24, 25. Providing further assessment of Dr. Gonzalez's opinions specifically in response to the Appeals Council's order, see Tr. at 25-26, the ALJ inferred that until 2011, Plaintiff was treated and examined by Dr. Gonzalez's ARNP rather than Dr. Gonzalez himself, and the ALJ found this treatment "d[id] not provide any indication of a serious condition requiring Dr. Gonzalez's intervention." Tr. at 25. Also, among other reasons for discounting the opinions, the ALJ noted that the treatment records lacked a diagnosis of depression. Tr. at 26.

Plaintiff argues the ALJ misstated the evidence in assessing Dr. Gonzalez's opinions. See Pl.'s Br. at 14-15, 24-25. Plaintiff asserts, for instance, that "[f]or the ALJ to say that Dr. Gonzalez never personally examined [her] is not supported by the record." Id. at 15; see id. at 24. According to Plaintiff, Dr. Gonzalez's "squiggly 'signature' (practically illegible)" appears on the RFC assessments, id. at 15; see Tr. at 440, 442, 645, 651, and the same or similar mark also "appears on multiple progress notes," Pl.'s Br. at 15 (citing, as examples, Tr. at 444, 446, 450, 451-55, 460, 485-86, 488, 519-20, 539).

Plaintiff contends the ALJ made other misstatements, see id. at 15, 24-25, including the ALJ's comment that "there is no [depression] diagnosis in the treatment record," Tr. at 26. Citing various records from Dr. Gonzalez's office, Plaintiff argues this comment is untrue, Pl.'s Br. at 15 (citing, as examples, Tr. at 436, 443, 539, 627, 629, 631). She also points out that Dr. Gonzalez prescribed an antidepressant, Citalopram, in April 2013. Id.; see Tr. at 627.

-11-

Another misstatement of the ALJ, according to Plaintiff, concerns why Plaintiff stopped her part-time housekeeping work in May 2010. Id. at 24-25; see Tr. at 24. Plaintiff asserts that, contrary to the ALJ's remark that she "testified that she stopped performing this job due to depression rather than due to the physical limitations," Tr. at 24, she "actually first listed her back pain as the cause of her inability to perform her job and then added that she was mentally ill because she was attacked," Pl.'s Br. at 25 (citing Tr. at 46 (August 2011 hearing)).

Furthermore, Plaintiff disputes the ALJ's suggestion that Dr. Gonzalez provided inaccurate opinions to help Plaintiff obtain disability benefits. See id. at 14, 24; Tr. at 24. Plaintiff contends, "There is absolutely no support that Dr. Gonzalez would risk his medical license by defrauding the federal government for his patient." Pl.'s Br. at 14; see id. at 24.

Upon review, the undersigned finds that several concerns raised by Plaintiff require the ALJ's further consideration. First, in assessing Dr. Gonzalez's opinions, the ALJ mischaracterized evidence by stating that there was no depression diagnosis in the treatment record, see Tr. at 26, and also by stating that Plaintiff testified she stopped working only because of depression and not physical limitations, see Tr. at 24. As Plaintiff correctly points out, see Pl.'s Br. at 15, 25, both of these points are contradicted by the record, see Tr. at 46 (Plaintiff's August 2011 hearing testimony regarding why she stopped working); see, e.g., Tr. at 443, 539, 543, 627, 629, 631 (treatment records listing depression among Plaintiff's conditions).

Second, it remains unclear whether substantial evidence supports the ALJ's finding—without explanation—that Dr. Gonzalez himself did not (or primarily did not) treat or examine Plaintiff.[8]  Based on the illegible "squiggle" of a signature that appears on Dr.

---

[8] The ALJ's finding itself is unclear. Some remarks in the Decision suggest the ALJ found Dr. Gonzalez did not treat or examine Plaintiff at all, see Tr. at 25, and other remarks suggest the ALJ
(continued...)

-12-

Gonzalez's RFC assessments, see Tr. at 440, 442, 645, 651, as well as the accompanying handwriting on the 2013 assessments,[9] see Tr. at 644-45, 647-51, many treatment notes in the record, from various years, appear to have been signed solely by Dr. Gonzalez himself and filled out mostly by him, see, e.g., Tr. at 444, 467, 485, 486, 488, 491, 520, 551, 561, 567, 571, 636-42; see also Tr. at 519 (September 2006 prescription for Lortab with same signature). His signature—or a similar mark—also appears on many other treatment notes that do not otherwise contain his handwriting. See, e.g., Tr. at 451, 464, 521, 522, 542, 559, 560, 570, 582.

While the illegibility and variability of the marks—as well as the range of handwriting and signatures on the treatment notes—make it difficult to discern the extent of Dr. Gonzalez's direct role in Plaintiff's treatment, a review of the records suggests his role was more extensive than the ALJ found. The ALJ's failure to explain or support her inference on this point leaves unclear whether the ALJ adequately considered the whole record in making the inference and assessing Dr. Gonzalez's opinions.

Third, it is unclear whether substantial evidence supports that ALJ's statement that certain entries in the record "suggest[] Dr. Gonzalez [was] more interested [Plaintiff's] approval for benefits than he [was] in treating her impairments" and that Dr. Gonzalez was "acting as an advocate for her receipt of benefits, rather than providing an accurate assessment of her ability to work." Tr. at 24. The two treatment notes (from January and July 2011) cited by the ALJ to support this assertion merely indicate, among Plaintiff's subjective issues, that Plaintiff was waiting to be approved for disability benefits. Tr. at 485,

---

[8](...continued)
found Dr. Gonzalez did not "primarily treat[]" Plaintiff, Tr. at 24, or did not examine her "until 2011," Tr. at 25.

[9] Aside from the signatures, the handwriting on the 2011 RFC assessments appears to be different from the handwriting on the 2013 RFC assessments. See Tr. at 436-40, 441-42.

-13-

491. This hardly reflects any special interest in the matter. Without further explanation or support, the Decision fails to convey a basis for the ALJ's dismissive statement.

Notably, Defendant acknowledges some error in the ALJ's assessment, remarking that "the ALJ incorrectly stated there was no depression diagnosis and may have been incorrect in concluding Dr. Gonzalez did not appear to examine Plaintiff before 2011." Def.'s Mem. at 11. Defendant contends, nonetheless, that "such errors were harmless as the progress notes, other evidence in the record, and Plaintiff's work history do not support Dr. Gonzalez's opinions." Id. (citations omitted).

The undersigned, however, cannot conclude that the errors are harmless or that substantial evidence supports the ALJ's assessment, given the other concerns addressed above. Accordingly, remand is needed for the ALJ to give Dr. Gonzalez's opinions further consideration.

**C. Other Medical Opinions at Issue (Dr. Poetter, Dr. Benton, and Dr. Courmier)**

As noted, Plaintiff also disputes the ALJ's conclusions with respect to examining psychologists Dr. Poetter and Dr. Benton, as well as non-examining psychologist Dr. Courmier. See Pl.'s Br. at 16-20.

Dr. Poetter examined Plaintiff in July 2011, see Tr. at 492-514, and Dr. Benton examined her in May 2010 and May 2013, see Tr. at 397-400; Tr. at 603-10. Both Dr. Poetter and Dr. Benton diagnosed Plaintiff with "major depressive disorder, recurrent, severe"; panic disorder; and mild mental retardation. Tr. at 513, 606 (capitalization omitted). Dr. Poetter found Plaintiff had marked limitations in activities of daily living; in social functioning; and in maintaining concentration, persistence, or pace. Tr. at 504. Dr. Poetter also indicated Plaintiff was markedly limited in several work-related respects, including her "ability to perform activities within a schedule, maintain regular attendance, and be punctual

within customary tolerances"; and her "ability to accept instructions and respond appropriately to criticism from supervisors." Tr. at 492-93.  Dr. Benton found, among other things, that Plaintiff had moderate limitations in her ability to interact appropriately with the public, with supervisors, and with co-workers.  Tr. at 609.  Dr. Benton concluded, moreover, that "[d]ue to the severity of [Plaintiff's] mood symptoms[,] she "d[id] not currently appear capable of maintaining employment."  Tr. at 606-07.

Dr. Courmier reviewed Plaintiff's records and completed an assessment in June 2010. See Tr. at 418-35.  She determined Plaintiff had mild limitations in activities of daily living and moderate limitations in social functioning and in maintaining concentration, persistence or pace.  Tr. at 428.  Furthermore, Dr. Courmier indicated Plaintiff was "not significantly limited" in most work-related respects, Tr. at 432-33, and she found Plaintiff "generally capable of interacting appropriately with the public, coworkers and supervisors," as well as "able to perform routine, repetitive tasks on a sustained and independent basis and in a socially appropriate manner," Tr. at 434 (capitalization omitted).

The ALJ gave "significant weight" to Dr. Courmier's assessment, Tr. at 27 (citation omitted), and she gave "no significant weight" to the opinions of Dr. Poetter and Dr. Benton. Tr. at 26.  The examining opinions were rejected mainly because the ALJ found them inconsistent with the record, including Plaintiff's statements about her daily living activities. Tr. at 26-27.

Plaintiff argues the ALJ erred in relying on Dr. Courmier's assessment over the examining opinions of Dr. Poetter and Dr. Benton (as well as Dr. Gonzalez's treating opinions) in part because, according to Plaintiff, "Dr. Courmier had barely any evidence before her." Pl.'s Br. at 19 (citing Tr. at 418-31).  As support, Plaintiff points out that Dr. Courmier's opinion is Exhibit 7F in the administrative transcript, and the only medical records

among the prior exhibits in the transcript are a mental examination from Dr. Benton and a physical examination from Timothy J. McCormick, D.O. Id.

As to the ALJ's assessment of Dr. Poetter's and Dr. Benton's opinions, Plaintiff argues the ALJ erred in part because she "painted an inaccurate picture of [Plaintiff's] daily activities." Id. at 17. Plaintiff asserts, for example, that "[t]he ALJ thought [Plaintiff] said she drove three times a week[, but] in fact, she said 'about three times out the month.'" Id. (citing Tr. at 43); see Tr. at 26 (ALJ stating Plaintiff "testified that she drives three times per week); Tr. at 43 (Plaintiff's 2011 hearing testimony). Another inaccuracy, according to Plaintiff, is the ALJ's statement that Plaintiff shops for her groceries. Pl.'s Br. at 17, 18; see Tr. at 26-27. Plaintiff acknowledges that "[s]he told Dr. Poetter that she goes to the store with her son," but she contends there is no indication of how often she goes or whether "she goes alone or even goes IN the store." Pl.'s Br. at 17 (citing Tr. at 511). "In fact," Plaintiff asserts, "she testified that her son does the grocery shopping and she does not do her 'own' shopping." Id.; see Tr. at 56-57 (2011 hearing testimony). Plaintiff further contends, as to her social functioning, that "the ALJ failed to mention . . . that [Plaintiff] no longer attended church, has no friends[, and] had panic attacks multiple times per week," among other things. Id. at 16; see Tr. at 511 (Dr. Poetter's report).

Upon review, the undersigned finds that, in addition to reconsidering Dr. Gonzalez's opinions on remand, the ALJ must also reconsider Dr. Poetter's and Dr. Benton's opinions and, as appropriate, Dr. Courmier's opinion. First, the ALJ's mischaracterizations of Plaintiff's daily functioning activities, as discussed in Plaintiff's Brief and summarized above, prevent the undersigned from determining whether the ALJ's assessments are supported by substantial evidence. Second, the opinions of Dr. Poetter, Dr. Benton, and Dr. Gonzalez are consistent or similar in various respects. The ALJ's reconsideration of Dr. Gonzalez's

opinions appears likely to affect the weight assigned to the other opinions of Plaintiff's mental limitations, including that of Dr. Courmier.

## V. Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to 42 U.S.C. § 1383(c)(3) and sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

  (A) Reevaluate the opinions of Dr. Gonzalez, Dr. Poetter, Dr. Benton, and if appropriate, Dr. Courmier; assign the appropriate weight to such opinions; explain the reasons for the weight assigned;

  (B) If appropriate, address the other issue raised by Plaintiff in this appeal; and

  (C) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 22, 2016.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

clr
Copies to:
Counsel of record